FILED

2017 JUN 21 PM 4:22

CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | INDICTMENT |
| | ) | |
| Plaintiff, | ) | JUDGE JUDGE POLSTER |
| | ) | |
| v. | ) | |
| | ) | CASE NO. 5:17 CR 240 |
| JAMES PEARL, DOREEN PEARL, and SHUANG "LUCIA" LIU, aka "GLORIA," | ) | |
| | ) | Title 18, United States Code, Sections 371, 542, 545, and 2 |
| | ) | |
| Defendants. | ) | |
| | ) | |

The Grand Jury charges:

**General Allegations**

At all times relevant to this Indictment:

1. The United States Customs and Border Protection ("CBP") was responsible for the assessment and collection of duties, taxes and fees on merchandise imported into the United States.

2. CBP used an electronic system called the Automated Commercial System ("ACS") to track, control, and process all commercial goods imported in the United States by filing, clearing, and storing necessary customs paperwork electronically. The ACS "system

owner" was the CBP Office of Field Operations, Office of Administration, and Office of International Trade. The ACS mainframe interface system/server was physically located in Springfield, Virginia.

3. Customs brokers submitted electronic filings to CBP using the Automated Broker Interface ("ABI"), which interfaced with the ACS through the use of wire communications in interstate and foreign commerce. Therefore, electronic filings transmitted to CBP were submitted via wire in interstate and foreign commerce through the ACS.

4. The information was submitted in a packet of information referred to as a "Commercial Entry Summary" form and "Summary Entry Packets;" the form required basic identifying information of the manufacturer, exporter and importer, as well as the type of duty designation under which the goods fell. These forms were considered material statements made to CBP and were required to contain additional documentation in support of their representations about the nature and value of the goods, or the duty and tax owed on them.

5. Required supporting documentation included invoices, bills of lading, ISF and AMS forms, a statement by the importer that it understood its duty to pay all taxes and duties, and other shipping documents identifying the manufacturer, exporter, importer, and ultimate destination of the goods.

6. The importer and exporter provided the information and data contained in the electronic filings submitted by the customs brokers to CBP. The customs brokers did not provide information independent from that provided by the client importer or exporter.

7. CBP was also responsible for collecting duties assessed by the Department of Commerce on goods and merchandise whose importation was regulated by increased duties and

taxes intended to slow the introduction, or "dumping," of certain goods into United States' markets.

8. Dumping occurred when manufacturers or exporters produced goods at substantially lower costs than U.S. manufacturers could and then exported those goods in large quantities to the U.S. in order to "flood" the market with low cost foreign produced goods of inferior quality. To address this, Congress and the Department of Commerce routinely drafted and enacted laws and regulations setting import taxes on certain goods or products at high levels to counteract the low cost of foreign manufacture or export and make the final cost to U.S. importers more competitive with similar domestic goods. These laws and regulations were commonly called "Anti-dumping laws" or "Anti-dumping Orders."

9. Anti-dumping laws and orders were used in industries where the cost of both research and development and production was high; likewise, anti-dumping laws and orders were also used to ensure overall quality in certain products.

10. On September 4, 2008, the Department of Commerce published in the Federal Register amended Anti-Dumping Order A-570-912 (the Order) identifying certain new off-road pneumatic tires made in the People's Republic of China (PRC) as a target for increased import taxes. The Order defined what type of tire was considered an off-road tire, what industrial uses these types of tires usually had, and any relevant exceptions to the Order. Generally, the tires contemplated in the Order were used for agricultural, logging, and mining operations on unpaved surfaces.

11. The Order established the import tax on these types of tires to be levied at a maximum rate of 210.48%. The Order identified manufacturers and exporters who would not be charged the maximum rate of 210.48% tax rate, but would be levied a reduced rate of taxation

ranging from as low as 0% to 12.91% up to 29.93%. For a lower rate to apply, however, the importer had to prove that its shipment came from both the manufacturer and exporter as listed and paired with each other in the Order.

12. For instance, if "Manufacturer X" and "Manufacturer Y" were exempt and "Exporter A" and "Exporter B" were also exempt under the Order, the Order would provide which entities were paired with each other for the exemption. Thus, if Manufacturer X was paired with Exporter A, while Manufacturer Y was paired with Exporter B, shipments listed from X and A, or Y and B, would be taxed at 12.91%. Conversely, shipments from X and B or Y and A, even though all four entities are on the exempted list, would be taxed at 210.48% because they were not properly paired. Likewise, any manufacturer or exporter not on the list, even if they used an otherwise-exempted counterpart were taxed at the 210.48% rate.

Manufacturers and exporters were exempted by the Order after the Department of Commerce determined those companies were free from direct foreign government influence over their operations.

13. The Order has been in effect continuously from September 4, 2008, through the date of this Indictment.

14. Pro-Trac Tires, LLC (Pro-Trac) was incorporated in Nevada, on or about June 30, 2010, with its office operations located at 555 Frost Road, Suite 106, Streetsboro, Ohio. JAMES PEARL, hereinafter "PEARL," was the President of Pro-Trac, whose officers were PEARL, J.C., and K.L., both individuals known to the Grand Jury. DOREEN PEARL was an employee of Pro-Trac, as were A.H., and G.N. all individuals known to the Grand Jury.

15. Pro-Trac was engaged in the business of importing tires defined by the Order from China, India, and other international suppliers. Pro-Trac did not maintain a retail location;

its business was purely as an intermediary, or middleman, between the foreign supplier and the domestic retailer.

16. In this role, Pro-Trac was responsible for importing tires to the United States and dealt directly with the foreign exporters and CBP as tire shipments traveled from foreign locations through the United States' customs process.

17. Qingdao Au-Shine Tyre Co. LTD. (Au-Shine), was a tire exporting company located in Qingdao, People's Republic of China. Its business was located entirely in China and Au-Shine did not have a physical or legal location in the United States.

18. Au-Shine exported tires defined by the Order and also arranged for the export to countries including the United States. However, Au-Shine was neither an exempted manufacturer nor an exporter under the Order.

19. SHUANG "LUCIA" LIU, hereinafter LIU, who also at times used the alias "GLORIA," was the point of contact for Au-Shine foreign accounts. LIU communicated via email, telephone, Skype and facsimile with customers to fulfill orders, coordinate exportation, and receive wire transfers for payment of tires exported by Au-Shine. Other employees of Au-Shine who contacted PEARL, Pro-Trac and its employees were E.H. and A. LNU.

20. LIU joined Au-Shine in approximately March, 2010; prior to working at Au-Shine, LIU was PEARL's point of contact at Shuanghe Odyking Tires (Odyking) from on or about August, 2009, through on or about March, 2010.

21. Odyking was a Chinese company that manufactured and exported tires. Its business was located entirely in China and Odyking did not have a physical or legal location in the United States.

22. Odyking was neither an exempted manufacturer nor an exporter under the Order.

23. Quingdao Hengda Tyres Company, LTD., (Hengda), was a tire manufacturing company located in Qingdao, People's Republic of China. Its business was located entirely in China and Hengda did not have a physical or legal location in the United States.

24. Hengda manufactured tires defined by the Order. Hengda was an exempted manufacturer under the Order, however, in order to receive the exemption its tires were required to be exported by either Hengda or Qingdao Sinorient International, LTD.

25. Milestone manufactured tires defined by the Order. Milestone was an exempted exporter under the Order, however, in order to receive the exemption its tires were required to be manufactured by Qingdao Shuanghe Tyre Company, LTD., Shongdong Zhentai Tyre Company, LTD, Shifeng Double-Star Tire Company, LTD., or Weifang Langtai Tyre Company, LTD.

26. Pro-Trac never was a customer of Milestone.

27. Au-Shine was not a part of Milestone and LIU was not in its employ during any time relevant to this Indictment.

## COUNT 1

(Conspiracy to Defraud the United States of America,
18 U.SC. §371)

28. Paragraphs 1 through 27 of the Indictment are re-alleged and incorporated by reference as if fully set forth herein.

## The Conspiracy

29. From on or about August 14, 2009, through on or about November 22, 2013, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendants JAMES PEARL, DOREEN PEARL, and SHUANG "LUCIA" LIU, aka "GLORIA," and others known and unknown to the Grand Jury did knowingly and willfully conspire and agree together and with each other, and with other persons known and unknown to the Grand Jury, to defraud the United States of and concerning its governmental functions and rights, hereinafter described, that is: (a) of and concerning its right to have its business and its affairs, and particularly the transaction of the official business of CBP conducted honestly and impartially, free from corruption, fraud, improper and undue influence, dishonesty, unlawful impairment and obstruction.

## Object of the Conspiracy

30. It was the object of the conspiracy that LIU, PEARL and DOREEN PEARL submitted and caused to be submitted fraudulent, false, and altered invoices to CBP to lower the taxable duty paid by Pro-Trac on tire shipments from Au-Shine to Pro-Trac.

## Manner and Means of the Conspiracy

31. It was part of the conspiracy that PEARL, DOREEN PEARL and LIU by deceit, craft, trickery and dishonest means, defrauded the United States by interfering with and obstructing the lawful governmental functions of the CBP in that the defendants communicated via email and other electronic means and caused others to communicate via email and other

electronic means, to create and alter invoices and other Commercial Entry Summary documents to submit, and have brokers submit on their behalf, via email and other electronic means, to CBP.

32. LIU, PEARL and DOREEN PEARL presented fraudulent invoices using the names of exempted manufactures and exporters when the shipments contained tires manufactured and/or exported by Au-Shine. LIU, PEARL and DOREEN PEARL physically altered invoices examined by CBP to make them appear to be invoices sent from exempted companies. PEARL was able to lower Pro-Trac's duty rate from 210.48% to 12.91% by submitting fraudulent and false invoices.

33. PEARL, using the email jim@Pro-Tractire.com, emailed LIU, using the email admin@Au-Shine.com.cn, and directed his employees at Pro-Trac to contact LIU via email concerning the labeling of invoices.

34. LIU, PEARL and DOREEN PEARL substituted exempted company names such as Hengda, Shuanghe and Qingdao Milestone on Au-Shine invoices to evade paying the required duty of up to 210.48%.

35. After the goods passed through United States customs, PEARL sent wire transfer payments to LIU for any outstanding shipments. These wire transfers were often for partial payments of multiple shipments sent to Pro-Trac from or by ostensibly exempted entities; however, all of the wire transfers were sent to Chinese bank accounts controlled by Au-Shine.

36. PEARL and DOREEN PEARL also used these exempted company names with shipments arriving from other non-exempted companies, including Odyking and Qingdao Qihang Tyre Co. Ltd. PEARL remitted wire transfers to a bank account controlled by Odyking for shipments from these companies.

37. PEARL and LUI also devised schemes to create fraudulent letterhead, corporate stamps, and invoices purporting to be from companies on the exempted list in order to create fictitious supporting document for the packages submitted to CBP.

38. Additionally, in an effort to solicit additional customers, LIU offered via email fraudulent documents and wire transfers used by Pro-Trac as proof that CBP duties and taxes could be evaded if importers used her company.

39. By submitting approximately 176 Entry Summaries containing fraudulent and false statements in the invoices and documentation, the United States was deprived of approximately $9,721,794.32 in revenue required pursuant to the Order.

**Acts in Furtherance of the Conspiracy**

PEARL, DOREEN PEARL and LIU committed and attempted to commit various overt acts in furtherance of the conspiracy in the Northern District of Ohio, Eastern Division, and elsewhere, including:

40. On or about September 27, 2010, K.L., an employee with Coker Tire whose identity is known to the Grand Jury, emailed A.H., an employee of Pro-Trac. In the email K.L. requested a list of all of Pro-Trac's suppliers. A.H. responded with a list containing five (5) suppliers including their name, address, contact information and website. The companies A.H. listed as Pro-Trac's suppliers were Au-Shine, Qingdao Odyking Tyre Co. LTD., Dneproshina JSC, Maxon International Company, LTD. (Triangle Brand), and Winland Int'l Inc., dba Super Tire Inc.

41. On or about October 20, 2010, LIU, using the name "Gloria," emailed PEARL about the price of filling several orders placed by PEARL, "for the agricultural tires, before I tell

you that 19#, 25#, 28#, 30#, 35#, 38# we can load this month, but longxing factory tell us to increase the price."

42. On or about March 8, 2011, LIU, using the name "Lucia," emailed PEARL, stating in part, "We buy 100pcs from Taishan Tyre Factory 100pcs. Their price is 360usd/pcs. Now we change the brand to be Pro-Trac. Because we really hope our delivery can be sooner for you. and I am not sure when the machinery can repair well. We confirm with you 26# 52# can be shipped this week. Please discuss with your customer and ship the tyres as soon as possible, now the tyres still increased price, we hope we can load all the old orders as soon as possible. If not, the factory will sell our tires with higher price to others. But please confirm with us, when you can send us the balance. If not, 41# will be canceled to next week shipping time. Gloria"

43. On or about April 7, 2011, PEARL sent an email with a letter attached to LIU stating, "Hello Gloria: We need your help. U.S. Customs Service is telling us that we have used the wrong exporter on two shipments. Please reference the following shipments: 1) Your Commercial Invoice Number AU10A0617, dated August 1, 2010. The Commercial Invoice and Packing list both say Qingdao Au-Shine Group Co., LTD, and they should say Qingdao Shuanghe Tyre Co., Ltd. The shipper/exporter on the Bill of Lading is listed as Qingdao Au-Shine Tyre Co., LTD. The U.S. Customs Service is telling us that we must pay 210.48% antidumping duty because the exporter should say either Qingdao Free Trade Zone Full-World International Trading Co., Ltd., or Qingdao Milestone Tyre Co., Ltd. These are the only two exporters that qualify for the 12.91% antidumping duty. If it is not one of the exporters listed above, we will have to pay 210.48% antidumping duty. Please find the document you sent to our freight forwarder for this shipment and correct the shipper/exporter section. Please correct this document to one of the two exporters listed above and mark this document "corrected" on the

top. Please do not change any other information on this document. Please scan the document to [A.H.] at angie@protrac-tire.com." The second paragraph of the letter requested that Au-Shine take the same action for Commercial Invoice Number AU10A0401. In the same letter PEARL provided further instruction to LIU, "Also please see the attached listing for qualified exporters and manufacturers for antidumping duty from the United States International Trade Commission. In order for Pro-Trac Tire to qualify for the reduced antidumping duty amount of 12.91%. For you shipments, you MUST have the commercial Invoice say one of the factories listed on the attachment. Also, you MUST list the corresponding exporter that agrees with the proper factory. For example, if the tires are manufactured by Qingdao Shuanghe Tyre Co., Ltd, then the exporter should be either Qingdao Free Trade Zone Full-World International Trading Co., Ltd. Or Qingdao Milestone Tyre Co., Ltd. is listed as A-570-912-028 and the duty is 12.91%. Qingdao Milestone Tyre Co., Ltd. is listed as A-570-912-028 and the duty is 12.91%."

"If there is any agricultural or construction tires shipping to the United States that do not have the proper manufacturer or exporter combination then U.S. Customs Service will charge Pro-Trac Tire 210.48% because the shipment will enter the United States as a general PRC-Entity Number of A-570-912-000. See bottom of page # 11."

"Miss Gloria, please remember the Commercial Invoice and Packing List must say the manufacturers name at the top not Qingdao Au-Shine and the exporter must match what is on the antidumping order dated 11/24/2008."

44. On or about April 12, 2011, LIU, using the name "Gloria," asking, "Should we change the AMS for the QA#1 QA#2? Shipping forwarder tell us, commercial invoice and packing list should be same with bill of lading. But you tell us CI PL Writte "Qingdao Shuanghe Tyre Co., Ltd." bill of lading "Qingdao Milestone Tyre Co., Ltd." please confirm for us." A.H.

responded "You are correct!! The commercial invoice, packing list and bill of lading must be the same. The CI, PL must say Qingdao Shuanghe Tyre Co., Ltd. And the Bill of Lading must say Qingdao Milestone Tyre Co., Ltd. Thank you for your help and understanding!!"

45. On or about April 14, 2011, LIU, using the name "Gloria" engaged in an email conversation with PEARL, A.H. and D.M. The title of the emails was "All future shipments through Qingdao Au-Shine," and included the following:

A.H. wrote to LIU, stating, "Listed below is the correct information that needs to be on the (Commercial Invoice, Packing List and Bill of Lading) on all open/future shipments that will be shipping by Qingdao Au-Shine: On the Commercial Invoice and Packing List: The manufacturer needs to be shown as: Qingdao Shuanghe Tyre Co., Ltd. On the Bill of Lading: The Shipper/Exporter needs to be shown as: Qingdao Milestone Tyre Co., Ltd. If anyone has any questions, please feel free to contact me."

LIU wrote to A.H., stating, "Qungdao Shuanghe Tyre Co., Ltd. Has bankrupt, which is ok. But Qingdao Milestone Tyre Co., Ltd. still do business, if they know that, they must will take measure on that. We worry that very much. Before, how Odyking do that for you? Could we written Qingdao Shuanghe Tyre Co., Ltd. on the CI and PL and bill of lading??"

In an additional response to the same email, LIU wrote to A.H., stating, "On the Bill of Lading: Shipper/Exporter needs to be shown as: Qingdao Milestone Tyre Co., Ltd. Which is unsafe for us. 1. Qingdao Milestone Tyre Co., Ltd. In Qingdao, their office is near us. 2. Shuanghe has been bankrupt. Which is no problem. Now if we change the shipper on CI PL Bill of Lading, which is unsafe for us.

A.H. then wrote to LIU, stating, "Does that mean that you are going to put: a) Qingdao Shuanghe Tyre Co. Ltd. on the Commercial Invoice and Packing List, b) Qingdao Milestone Tyre Co., Ltd. on the Bill of Lading as the Shipper/Exporter. Please advise."

LIU responded to A.H., stating, "We can use Qingdao Shuanghe Tyre Co., Ltd. on CI PL, and Bill of Lading. But Qingdao Milestone Tyre, which will have problems on us if we use."

A.H. wrote back to LIU, stating, "On the Bill of Lading, Please use "Qingdao Free Trade Zone Full-World International Trading Co. Ltd. instead of Qingdao Milestone Tyre. Please confirm."

Finally, LIU responded to A.H., stating, "Qingdao Free Trade Zone Full-World International Trading Co. Ltd. They are our competitors too. We can try to use Qingdao Milestone first. But every time, west forwarding will confirm us stamp and the telex release. No matter what, west forwarding should give us more support on our work in the future."

46. On or about April 21, 2011, LIU emailed A.H., PEARL and D.M., stating, in part, "Attached with the QA12 details. It is first time for us to change the shipper and producer, so please confirm it with Jim. When we telex release, we should do fake seal for Qingdao Milestone Tyre Co., Ltd. We still worried that Qingdao Milestone Tyre Co., Ltd. will sue us. We know many customer use the forwarder name as the shipper from customs data. Could you use the forwarder as the shipper, which can protect your company and our company too. But you can write Qingdao Milestone and Qingdao Shuanghe Tyre Co., Ltd. on the ISF and AMS."

47. A.H. responded "I talked to Jim [PEARL]. We do not want you to get into any trouble. Please use Qingdao Shuanghe Tyre Co., Ltd. as the exporter/shipper also. Please change the documents and resend to me."

48. On or about April 25, 2011, A.H. emailed Cynthia LNU of Tian Rong Logistics, Inc, and requested that they change the Bill of Lading on three (3) Odyking shipments to show the manufacturer as Shuanghe and the exporter as Milestone.

Cynthia responded stating, in sum and substance, that it was difficult to make this change because too much time has passed since the shipment and suggested that they write a letter to Customs stating that the shipper made a careless mistake rather than "artificially change the docs."

49. On or about May 3, 2011, A.H. emailed LIU, stating in the subject line of the email, "Need some help on QA# 36." The email stated "I need some help. Can you reissue your Commercial Invoice and Packing List to show Qingdao Shuanghe Tyre Co., Ltd. at the top instead of Qingdao Au-Shine Tyre Co., LTD?? I will get with West Forwarding and have them change the Bill of Lading."

50. On or about May 26, 2011, A.H. emailed Vicki LNU, of the Chinese Tire Manufacturer L-Guard, PEARL and D.M. A.H. stated, in part, "Either Qingdao Free Trade Zone Full-World International Trading Co. Ltd. or Qingdao Milestone Tyre Co., Ltd. as the shipper/exporter."

Vicki LNU responded "We could not write other name on the document and BL, as we do not belong to this company."

51. PEARL responded "If it does not say this then the anti dumping and countervailing duties are 210.43% and we cannot pay this big duty."

52. On or about May 27, 2011, C.P., of West Forwarding Services, emailed A.H. and stated, in part, "John and I went over these shipments. The documents still need to be corrected to show Qingdao Milestone as the shipper. As by the antidumping case #."

A.H. responded, "By documents do you mean the bill of lading?? Isn't that generated by the Qingdao office??"

C.P. responded, "The commercial invoice and the packing list. They are still showing "From: Qingdao Au-Shine", too late to change the bill of lading."

C.P. responded again and directed A.H. to "look underneath your address, the "From" needs to show "Qingdao Milestone Tyre Co., Ltd."

53. On or about June 1, 2011, A.H. emailed LIU and PEARL and stated, in sum and substance, "The attached is what we need to avoid the 210% duty that the government is trying to charge us. Please make these changes to the (4) shipments and send them to me." A. H. attached copies of the Commercial Invoice and Packing List for AU11QA27 with written corrections replacing "Au-Shine" with "Milestone."

54. On or about June 2, 2011, A.H. emailed LIU and PEARL stating, "Hi Lucia, I need your help on the paperwork for QA# 27, QA# 18, QA# 28, QA# 35. I have attached a copy of the paperwork for QA# 27 with the changes that I need you to make and send to me on the Commercial Invoice and Packing List on all (4) shipments. The attached is what we need to avoid the 210% duty that the government is trying to charge us. Please make these changes to the (4) shipments and send them to me."

55. LIU responded stating "I have changed all the documents, please check it," and attaching a Commercial Invoice and Packing List dated March 4, 2011 for AU11QA27 that listed Shuanghe and Milestone without an Au-Shine logo.

56. On or about June 2, 2011, A.H. emailed LIU and PEARL, stating, "Thank you again for the revised documents. I am going to mark "Corrected Copy" on these since I do not see that on these revised documents as we requested. Also, on all future shipments please make

sure to put Qingdao Milestone Tyre Co., Ltd. on the Packing List and Commercial Invoice to avoid any questions on future shipments."

57. On or about June 14, 2011, LIU emailed PEARL, stating, "eight containers should delivery within three weeks, and factory puts the 7.5L to other factory (Shang Dong Zhen Tai Tyre Co., Ltd.) to product I,." attaching a wire transfer dated June 22, 2011, for the balance owed on invoice QA# 57.

58. On or about June 15, 2011, A.H. emailed C.P. of West Forwarding Services, stating, "Attached is the corrected copy on QA# 20 that you need. Attached are the NEW corrected copies on QA# 35 and QA# 28, and the packing list on QA# 13. She realized that the city and state were wrong." The corrected invoices listed Milestone as the seller. A.H. also attached a folder containing copies of invoice QA# 35 that listed Shuanghe on the invoice and had the Au-Shine logo on the top left hand corner of the form. There were also four (4) versions of the Commercial Invoice and Packing List for AU11QA18. The first one had Au-Shine at the top of the page, the Au-Shine logo in the top left hand corner, and Au-Shine listed on the "from" line and as the "Seller". The second version of the Commercial Invoice had Shuanghe at the top of the page, still had the Au-Shine logo, had Milestone listed on the "from" line, and had Shuanghe as the "Seller". Following "Seller" they changed the line "For and on behalf of" from Au-Shine to "For or on behalf of" Shuanghe. The third version was the same as the second, minus the Au-Shine logo. The fourth version had Milestone at the top of the page and the signature portion at the bottom that previously listed Au-Shine or Shuanghe was removed.

59. In an undated email, A.H. sent to LIU, A.H. stated, "Attached are the documents for QA#18 with the changes that are needed." A.H. attached a Commercial Invoice and Packing List for AU11QA18. The invoices originally said Shuanghe and had the Au-Shine logo and

name in the top left hand corner. There were handwritten corrections notating that Shuanghe needs to be replaced with Milestone, the Au-Shine logo needs removed, and the address updated.

60. On or about October 18, 2011, J.L. emailed C.P., D.S. (an employee of West Forwarding Services whose identity is known to the Grand Jury), A.H., PEARL and M.P., (an employee of a forwarding company whose identity is known to the Grand Jury). The email stated, "Hello WEST and HLS team members, To all involved with shipping from Qingdao to CNEE Pro-Trac Tire, please do not list Qingdao Au-Shine Group Co on ANY documentation. Qingdao Milestone Tyre Co., Ltd. should be the company on the commercial invoice, the packing list, the shipper on the AMS form, and the seller and consolidator on the ISF form. The only section they will not be the listed party will be on the manufacturer and that will be Shuanghe Tyre Company. I have also asked that the CNEE, in copy, send this to Au-Shine /Milestone so they are aware of how the information should be filled out."

61. On or about November 15, 2011, A.H. emailed LIU and stated, "Attached are the first (2) Harvest King Brand Implement Orders from the Shifeng Factory for November production, P.O. 3331285 for the Memphis location and P.O. 3331285 for the Summerville location."

62. On or about November 22, 2011, A.H. emailed C.P., J.L. (of West Forwarding Services), and PEARL, stating, "We have emailed Lucia explaining to her that the paperwork on these spreadsheets will be different from previous/current ones. Needless to say we want to make sure that the paperwork is filed correctly with the first shipment. These shipments designated will be a (7) digit number instead of it starting with a QA like our current shipments. Our current open orders are: 3331285, 3331284, 3331642 and 3331640 – There will be multiple shipments on each P.O. The exporter on the paperwork should be: Qingdao Milestone Tyre Company, The

manufacturer should be: Shifeng Double-Star Tyre Company, Anti dumping A-570-912-030 – 12.91, Countervailing C-570-913-5.62."

63. On or about December 22, 2011, A.H. emailed Jessica LNU, (of Odyking), PEARL and D.M., stating, "Make sure to give her (referring to B.S. with Honour Lane Shipping) our order numbers #60, #61, #62, #63 or #64 when you are making each booking. Also, please make sure that: Exporter on the paperwork is: Qingdao Milestone Tyre Co., Ltd., Manufacturer is: Qingdao Shuanghe Tyre Co., Ltd. Odyking cannot appear anywhere on the paperwork."

64. On or about January 4, 2012, PEARL forwarded to D.M. an email from Yamina Ma of Hengda Tyre Co., Ltd. stating "Ever heard of these people??????????????" The Ma email described the products that Hengda Tyre offered and at the end of the email Ma stated, "For the USA marketing, we can use the average tariff, other company's tariff is more than 210%, so you can do not worry about the high tariff."

65. On or about June 14, 2012, documents created by employees of Pro-Trac listed Hengda on commercial invoice entries.

66. On or about March 5, 2012, LIU emailed PEARL, stating, "Lucien is doing the job, taking some molds to the other factory."

67. On or about April 1, 2012, Maggie LNU of Milestone Tire emailed A.H. and stated, in sum and substance, "I am Maggie from Qingdao Milestone Tyre Company. We are supplying Denman through American International Tire Inc. While when u were also working there. But I am sorry to say unfortunately we found there were some confusions between my company and your new company according to the American Customs records in 2011. We have never exported to your company and also we have never received any payment from your company. But we cannot understand how we can be Shipper for u to clear Customs. According

to the Anti-dumping duty regulations, this is not correct. I think u know this very well. We definitely need the solution from your company. Pls check and reply my mail."

68. On or about May 3, 2012, A.H. emailed LIU, stating, "I talked to Jim and he told me that effective immediately, that you are to start using: Qingdao Hengda Tyres Co., Ltd. (Exporter & Manufacturer) A-570-912-027 (Anti-dumping code) 12.91 (Tarriff) on all the paperwork for all of our shipments. Please confirm this. I am also going to notify my contacts at West Forwarding of the change to make sure that all the documents (Bill of Lading, Commercial Invoice and Packing List) are done correctly. Please be sure to use their correct address also."

69. On or about May 1, 2013, A.H. emailed J.L. and C.P., (both with West Forwarding Services), stating, "I pulled the files on the (3) included in this email and I don't show where customs questioned the paperwork that was originally submitted nor did we send any corrected docs. The B/L, CI and PL all show Au-Shine and shouldn't…Can you double check your files to see if I have missed something and what the next step is…Do we get corrected docs and file them with customs [referencing Au-Shine invoices QA#17, QA# 26 and QA# 34]?"

70. On or about August 16, 2013, PEARL emailed LIU and A.H., stating, "We are in trouble with the United States Customs Department because of some paperwork you filed in error on some shipments. QA# 17 container # GESU6171828 P.O. # 1014422 - The original Bill of Lading – Commercial Invoice – Packing List all say Qingdao Au-Shine……All these Documents should say Qingdao Hengda as the manufacturer and exporter. QA# 26 container # AMFU8516384 P.O. # 1014254 - The original Bill of Lading – Commercial Invoice – Packing List all say Qingdao Au-Shine……All these Documents should say Qingdao Hengda as the manufacturer and exporter. QA# 34 container # TGHU7569892 P.O. # 1014283 - The original

Bill of Lading – Commercial Invoice – Packing List all say Qingdao Au-Shine……All these Documents should say Qingdao Hengda as the manufacturer and exporter. We will also need all the replacement documents signed and stamped by Qingdao Hengda and a letter on Qingdao Hengda letterhead saying that they manufactured these tires and exported them through our broker Qingdao Au-Shine…..”

71. On or about October 2, 2013, PEARL emailed LIU, A.H., D.M. and DOREEN PEARL, stating, in sum and substance, “Attached are the documents you sent to us. We need some corrections to these papers. The authorization letter should be signed by you and stamped for Au-Shine Tyre Group. Stamp from Milestone is perfect. We need this letter to be in Chinese also.” In addition, PEARL directed LIU to alter purchase orders: “(9) Move Qingdao Au-Shine Group stamp and signature to the left and put it under The Buyer: (10) Put Qingdao Shuanghe Tyre Co. Ltd. and their full address under were it says The Seller: Please send these four revised documents to us in both English and Chinese.”

72. On or about October 11, 2013, DOREEN PEARL emailed LIU, stating, “There are a few corrections needed to the attached paperwork. Milestone exporter – Please add Milestone stamp and sign under your stamp as I have written on the attached. QA26 & QA17 – Please change as I have written on the attached pages. These two pages should look like QA#34.” Attached to the email are purchase orders (QA #17, QA# 26 and QA #34) with handwritten corrections on them including changing the address and changing the name at the bottom of the page from Au-Shine to Shuanghe. Also attached are drafts of the authorization letter with handwritten corrections. The one draft lists what to write under the Au-Shine stamp and where to place the Milestone stamp.

73. On or about October 29, 2013, DOREEN PEARL emailed C.P. and J.L., stating, "One more for today. Looks like the original paperwork (Commercial Invoice, Packing List and B/L) all said Qingdao Shuanghe. Corrected paperwork was submitted (June 2011) with the paperwork saying Qingdao Milestone (Invoice, Packing List and B/L). Please let us know what else needs correcting to clear this charge.

74. On or about November 7, 2013, DOREEN PEARL emailed C.P., stating, "Here is another one that was sent to Roanoke. All of the corrected documents were filed 6-4-11 and the corrected documents say Milestone."

75. On or about November 19, 2013, DOREEN PEARL emailed J.L., stating, "Could you please review attached, PO to Au-Shine, PO from Au-Shine to Shuanghe, CI from Au-Shine, PL from Au-Shine, Wire confirmations. And let me know if I should proceed with gathering this information for the remaining 26 cases."

76. On or about November 21, 2013, J.L emailed DOREEN PEARL, stating, "Something that I noticed on this particular example is that all of the documents have Au-Shine listed and that is who you paid so that is who Customs is saying is the exporter. If this is the case it would be subject to the 210% duty rate as the docs should support Milestone as that is the exporter with the anti-dumping case number associated with the 12%."

77. On or about November 21, 2013, DOREEN PEARL emailed J.L., stating, "Now in today's email it is as if Au-Shine should not be listed at all, please clarify." J.L. responded to DOREEN PEARL, "That is exactly correct. I wanted to see exactly where the paper trail led that would believe customs should impose the 210% duty. I now see exactly why they came up with what they did. We now need to determine if they will accept refurbished documents where we

would need to list Milestone or if now that they see who was paid and the manufacturer was consistent if they will accept the letter from Au-Shine that you already provided."

78. On or about October 24, 2014, DOREEN PEARL emailed LIU, stating, "We have 4 new requests from Customs for purchase orders from you to the manufacturer Qingdao Shuanghe. Please see our old purchase orders to you (attached) for the information you will need to provide on the purchase order. Please format the order exactly as the last ones – only use the information provided on the attached purchase order. The only information that will change will be the tyre type, quantity, date and S/C NO. Please provide to us in English for review. Your prompt attention to this matter is greatly appreciated." LIU attached a packing list for invoice # AU11QA40 edited to appear that it was not an Au-Shine invoice. Written next to the edits was "No PO # on Packing List??? We need, To Pro-Trac."

79. Furthermore, as a result of the acts listed above, the PEARL, DOREEN PEARL and LIU fraudulently submitted to CBP the following information:

| Entry Date | Entry Number | Listed Manufacturer | Listed Exporter | Commercial Invoice | Shipper: Per Bill of Lading Entry Doc | Amount of tax not paid as a result of fraudulent statements |
|---|---|---|---|---|---|---|
| 7/8/10 | 60063403590 | Shuanghe | Qingdao Free Trade Zone | Shuanghe | Shuanghe | $70,647.08 |
| 7/12/10 | GL502108191 | | | Shuanghe | Shuanghe | $41,687.67 |
| 7/19/10 | 66917741382 | Shuanghe | Milestone | Shuanghe | Shuanghe | $41,554.90 |
| 7/19/10 | GL502109975 | | | Shuanghe | Shuanghe | $55,114.19 |
| 7/19/10 | GL502109991 | | | Shuanghe | Shuanghe | $52,598.95 |
| 8/2/10 | D2001635921 | | | Shuanghe | Shuanghe | $38,604.14 |
| 8/7/10 | GL502120253 | | | Shuanghe | Shuanghe | $82,634.49 |
| 8/9/10 | GL502131623 | | | Shuanghe | Shuanghe | $41,294.07 |
| 8/30/10 | T8600505598 | Shuanghe | Qingdao Free Trade Zone | Shuanghe | Shuanghe | $59,563.40 |
| 9/2/10 | GL502160523 | | | Shuanghe | No BOL | $104,063.42 |
| 9/3/10 | EP825023443 | | | Au-Shine | Au-Shine | $57,191.63 |
| 9/9/10 | GL502163071 | | | Shuanghe | Shuanghe | $37,781.16 |
| 9/23/10 | GL502175836 | | | Shuanghe | Shuanghe | $41,574.01 |
| 10/11/10 | GL502199331 | | | Shuanghe | Shuanghe | $43,661.97 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 10/30/10 | 66926898025 | | | Shuanghe | No BOL | $92,779.58 |
| 11/7/10 | EP825031685 | | | Au-shine | Au-Shine | $35,042.82 |
| 11/16/10 | EP825033699 | | | Au-Shine | Au-Shine | $33,413.70 |
| 11/23/10 | EP825033038 | | | Au-Shine | No BOL | $34,636.59 |
| 12/6/10 | EP825035843 | | | Au-Shine | Au-Shine | $51,759.14 |
| 12/10/10 | EP825036395 | | | Au-Shine | Au-Shine | $41,247.77 |
| 1/6/11 | EP825039175 | Shuanghe | Milestone | Milestone | No BOL | $31,480.80 |
| 1/26/11 | EP825039944 | | | Au-Shine | Au-Shine | $56,008.73 |
| 2/10/11 | EP825043631 | | | Au-Shine | Au-Shine | $39,500.78 |
| 2/15/11 | EP825043938 | | | Shuanghe | Shuanghe | $54,356.46 |
| 2/22/11 | EP825045081 | | | Shuanghe | Shuanghe | $34,933.37 |
| 2/24/11 | EP825044928 | | | Au-Shine | Au-Shine | $51,618.12 |
| 2/28/11 | EP825044902 | | | Au-Shine | Au-Shine | $36,481.26 |
| 2/28/11 | EP825044910 | | | Au-Shine | Au-Shine | $36,253.08 |
| 3/7/11 | EP825046386 | Shuanghe | Milestone | Milestone | No BOL | $38,998.35 |
| 3/11/11 | EP825046337 | Shuanghe | Milestone | Milestone | Au-Shine | $40,118.57 |
| 3/27/11 | EP825048119 | | | Shuanghe [Au-Shine Logo] | | $0.00 |
| 3/29/11 | EP825047269 | | | Au-Shine | Au-Shine | $70,531.85 |
| 3/29/11 | EP825048127 | | | Au-Shine | Au-Shine | $42,569.58 |
| 4/1/11 | EP825047640 | | | Au-Shine | Au-Shine | $43,078.94 |
| 4/1/11 | EP825047657 | | | Au-Shine | Au-Shine | $57,446.31 |
| 4/1/11 | EP825047665 | | | Au-Shine | Au-Shine | $46,354.01 |
| 4/4/11 | EP825047624 | | | Au-Shine | Au-Shine | $70,828.63 |
| 4/10/11 | EP825047616 | | | Au-Shine | Au-Shine | $65,038.32 |
| 4/14/11 | 10020662713 | Shuanghe | Milestone | Au-Shine | Au-Shine | $59,047.73 |
| 4/14/11 | 10020662721 | Shuanghe | Milestone | Au-Shine | Au-Shine | $67,266.66 |
| 4/20/11 | HK82103266 9 | Shuanghe | Milestone | Au-Shine | Au-Shine | $55,649.54 |
| 4/25/11 | 10003901039 | Shuanghe | Milestone | Au-Shine | Au-Shine | $57,814.90 |
| 4/26/11 | 10020663406 | Shuanghe | Milestone | Au-Shine | Au-Shine | $59,442.88 |
| 4/26/11 | 44272237650 | Shuanghe | Milestone | Au-Shine | Illegible | $68,345.98 |
| 4/26/11 | HK82103330 3 | Shuanghe | Milestone | Au-Shine | Illegible | $62,141.69 |
| 4/27/11 | 18202558385 | Shuanghe | Milestone | Au-Shine | Au-Shine | $62,443.98 |
| 5/12/11 | 44272238237 | Shuanghe | Milestone | Au-Shine | Au-Shine | $57,783.30 |
| 5/15/11 | 10070157986 | Shuanghe | Milestone | Shuanghe / Milestone | Shuanghe | $59,401.40 |
| 5/16/11 | 10003903118 | Shuanghe | Milestone | Au-Shine / Milestone | Au-Shine | $78,040.15 |
| 6/4/11 | 66025094666 | Shuanghe | Milestone | Shuanghe [Au-Shine Logo, Milestone] | Milestone | $60,215.39 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 6/4/11 | 66025094690 | Shuanghe | Milestone | Shuanghe [Au-Shine Logo, Milestone] | Shuanghe | $63,807.21 |
| 6/6/11 | 18202566727 | Shuanghe | Milestone | Shuanghe [Au-Shine Logo, Milestone] | Shuanghe | $61,060.98 |
| 6/7/11 | 10070160329 | Shuanghe | Milestone | Shuanghe [Au-Shine Logo, Milestone] | Milestone | $57,305.17 |
| 6/10/11 | 10070160568 | Shuanghe | Milestone | Shuanghe [Milestone] / Milestone | Shuanghe / Milestone | $64,115.42 |
| 6/14/11 | 10070158521 | Shuanghe | Milestone | Shuanghe [Au-Shine Logo, Milestone] / Milestone | Shuanghe / Milestone | $54,369.29 |
| 6/16/11 | 52008311731 | Shuanghe | Milestone | Milestone | Shuanghe | $57,305.17 |
| 6/16/11 | U1041106943 | Shuanghe | Milestone | Shuanghe [Au-Shine Logo, Milestone] | Shuanghe | $64,010.70 |
| 6/17/11 | 10070161111 | Shuanghe | Milestone | Milestone | Shuanghe / Milestone | $60,456.42 |
| 6/19/11 | 10046246525 | Shuanghe | Milestone | Milestone | Shuanghe | $58,636.80 |
| 6/23/11 | 18202567386 | Shuanghe | Milestone | Milestone | Milestone | $75,839.22 |
| 6/27/11 | 10088375430 | Shuanghe | Milestone | Milestone | Milestone | $73,134.49 |
| 6/28/11 | 10070162176 | Shuanghe | Milestone | Milestone | Shuanghe | $66,848.18 |
| 6/30/11 | 18202572717 | Shuanghe | Milestone | Milestone | Milestone | $72,802.57 |
| 7/8/11 | 10088378459 | Shuanghe | Milestone | Milestone | No BOL | $69,734.30 |
| 7/8/11 | 23529017941 | Shuanghe | Milestone | Milestone | Milestone | $55,928.12 |
| 7/22/11 | 10070164560 | Shuanghe | Milestone | Milestone | Milestone | $66,529.73 |
| 8/1/11 | EP825064694 | Shuanghe | Milestone | Milestone | Milestone | $62,072.54 |
| 8/31/11 | 10020670898 | Shuanghe | Milestone | Milestone | Milestone | $58,174.49 |
| 9/1/11 | EP825069933 | Shuanghe | Milestone | Milestone | Milestone | $46,488.72 |
| 9/20/11 | 52008315351 | Shuanghe | Milestone | Milestone | Milestone | $62,155.51 |
| 9/20/11 | U1041112511 | Shuanghe | Milestone | Milestone | Milestone | $41,009.60 |
| 9/26/11 | H3600711127 | Shuanghe | Milestone | Milestone | Illegible | $73,824.01 |
| 9/30/11 | 83409199409 | Shuanghe | Milestone | Milestone | Milestone | $67,533.37 |
| 10/3/11 | 10020673868 | Shuanghe | Milestone | Milestone | Milestone | $75,570.52 |
| 10/6/11 | 66025107104 | Shuanghe | Milestone | Milestone | Milestone | $63,449.60 |
| 10/6/11 | U1011126285 | Shuanghe | Milestone | Milestone | Milestone | $64,123.31 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 10/11/11 | 10020674379 | Shuanghe | Milestone | Milestone | Milestone | $175,872.87 |
| 10/19/11 | H3600712042 | Shuanghe | Milestone | Milestone | Milestone | $65,077.59 |
| 11/14/11 | U1041115670 | Shuanghe | Milestone | Milestone | Milestone | $56,785.57 |
| 11/25/11 | 83409202732 | Shuanghe | Milestone | Milestone | Milestone | $37,745.74 |
| 11/25/11 | 83409202773 | Shuanghe | Milestone | Milestone | Milestone | $50,267.74 |
| 12/4/11 | 10088420038 | Shuanghe | Milestone | Milestone | Milestone | $65,612.99 |
| 12/8/11 | 10046255435 | Shuanghe | Milestone | Milestone | Milestone | $62,005.37 |
| 12/20/11 | EP825085210 | Shuanghe | Milestone | Milestone | Milestone | $61,345.48 |
| 12/31/11 | 52008318249 | Shuanghe | Milestone | Milestone | Milestone | $64,378.19 |
| 1/1/12 | U1011200510 | Shuanghe | Milestone | | | $63,451.58 |
| 1/5/12 | 83409205958 | Shuanghe | Milestone | Milestone | Milestone | $50,489.01 |
| 1/9/12 | D3701036899 | Shuanghe | Milestone | Milestone | No BOL | $64,471.04 |
| 1/10/12 | U1011200494 | Shuanghe | Milestone | Milestone | No BOL | $63,518.75 |
| 1/14/12 | 10020680103 | Shuanghe | Milestone | Milestone | Milestone | $63,218.45 |
| 1/24/12 | 10070177125 | Shuanghe | Milestone | Milestone | Milestone | $63,643.22 |
| 1/24/12 | 66025117616 | Shuanghe | Milestone | Milestone | Milestone | $62,781.82 |
| 2/16/12 | 10070179444 | Shuanghe | Milestone | Milestone | L Guard | $87,088.85 |
| 2/16/12 | H3600719047 | Shuanghe | Milestone | Milestone | Milestone | $47,679.57 |
| 2/16/12 | H3600719054 | Shuanghe | Milestone | Milestone | Milestone | $46,527.73 |
| 2/16/12 | H3600719393 | Shuanghe | Milestone | Milestone | Milestone | $41,647.75 |
| 2/23/12 | 10003935698 | Shuanghe | Milestone | Milestone | No BOL | $45,156.60 |
| 2/24/12 | 10003935854 | Shuanghe | Milestone | Milestone | Milestone | $47,679.57 |
| 3/11/12 | H3600720243 | Shuanghe | Milestone | Milestone | Milestone | $42,843.06 |
| 3/16/12 | 10020683677 | Shuanghe | Milestone | Milestone | L Guard | $81,556.89 |
| 3/19/12 | 10003938759 | Shuanghe | Milestone | Milestone | Milestone | $40,954.29 |
| 4/4/12 | 10003939153 | Shuanghe | Milestone | Milestone | Milestone | $42,226.64 |
| 4/8/12 | H3600722793 | Shuanghe | Milestone | Milestone | Milestone | $50,560.14 |
| 4/14/12 | H3600723338 | Shuanghe | Milestone | Milestone | Milestone | $50,230.20 |
| 4/14/12 | H3600723346 | Shuanghe | Milestone | Milestone | Milestone | $49,649.34 |
| 4/15/12 | 10003942140 | Shuanghe | Milestone | Milestone | Milestone | $52,788.73 |
| 4/18/12 | 10003942504 | Shuanghe | Milestone | Milestone | Milestone | $49,422.13 |
| 4/20/12 | H3600723932 | Shuanghe | Milestone | Milestone | Milestone | $46,810.26 |
| 4/23/12 | 10020685417 | Shuanghe | Milestone | Milestone | L Guard | $81,556.89 |
| 4/24/12 | 10003943395 | Shuanghe | Milestone | Milestone | Milestone | $48,410.57 |
| 4/24/12 | 10003943445 | Shuanghe | Milestone | Milestone | Milestone | $49,202.83 |
| 4/28/12 | H3600724336 | Shuanghe | Milestone | Milestone | Milestone | $50,253.90 |
| 4/28/12 | H3600724344 | Shuanghe | Milestone | Milestone | Milestone | $49,550.55 |
| 5/3/12 | 10003943924 | Shuanghe | Milestone | Milestone | Milestone | $50,975.03 |
| 5/5/12 | H3600724559 | Shuanghe | Milestone | Milestone | Milestone | $53,284.63 |
| 5/5/12 | H3600724567 | Shuanghe | Milestone | Milestone | Milestone | $48,195.22 |
| 5/7/12 | 10003944435 | Shuanghe | Milestone | Milestone | Milestone | $48,981.55 |
| 5/7/12 | 10003944443 | Shuanghe | Milestone | Milestone | Milestone | $48,803.74 |
| 5/11/12 | H3600724906 | Shuanghe | Milestone | Milestone | Milestone | $51,457.11 |
| 5/11/12 | H3600724914 | Shuanghe | Milestone | Milestone | Milestone | $54,717.02 |
| 5/14/12 | 10003945408 | Shuanghe | Milestone | Milestone | Milestone | $51,148.90 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 5/18/12 | 18202639375 | Shuanghe | Milestone | Milestone | Illegible | $43,726.19 |
| 5/20/12 | H3600725606 | Shuanghe | Milestone | | | $53,227.34 |
| 5/20/12 | H3600725614 | Shuanghe | Milestone | Milestone | Milestone | $52,275.04 |
| 5/22/12 | 23519065728 | Shuanghe | Milestone | Milestone | Milestone | $43,785.47 |
| 6/14/12 | H3600727263 | Hengda | Hengda | Hengda | Hengda | $53,614.57 |
| 6/15/12 | 10003948543 | Shuanghe | Milestone | Milestone | Milestone | $52,395.56 |
| 6/15/12 | H3600727271 | Hengda | Hengda | Hengda | Hengda | $55,839.21 |
| 6/18/12 | 10003948535 | Shuanghe | Milestone | Milestone | Milestone | $49,633.54 |
| 6/19/12 | 10003949921 | Hengda | Hengda | Hengda | Hengda | $52,986.30 |
| 6/19/12 | 10003949939 | Hengda | Hengda | Hengda | Hengda | $53,081.13 |
| 6/20/12 | H3600727529 | Hengda | Hengda | Hengda | Hengda | $54,197.40 |
| 7/5/12 | 10003951117 | Hengda | Hengda | Hengda | Hengda | $46,436.85 |
| 7/6/12 | 10003951331 | Hengda | Hengda | Hengda | Hengda | $56,323.26 |
| 7/7/12 | H3600728428 | Hengda | Hengda | Hengda | Hengda | $57,789.22 |
| 7/14/12 | H3600729228 | Hengda | Hengda | Hengda | Hengda | $58,939.08 |
| 7/28/12 | 30071810046 | Hengda | Hengda | Hengda | Hengda | $50,279.59 |
| 7/30/12 | H3600729962 | Hengda | Hengda | Hengda | Hengda | $52,806.51 |
| 8/4/12 | 30071811150 | Hengda | Hengda | Hengda | Hengda | $56,109.88 |
| 8/8/12 | H3600730929 | Hengda | Hengda | Hengda | Hengda | $56,927.82 |
| 9/30/12 | 52008326127 | | | | | $62,805.26 |
| 10/19/12 | 66025144149 | Hengda | Hengda | Hengda | Hengda | $68,070.66 |
| 10/23/12 | U1011228750 | Hengda | Hengda | Hengda | Hengda | $73,921.10 |
| 11/25/12 | 52008327851 | | | | | $41,690.31 |
| 2/13/13 | 66025154478 | Hengda | Hengda | Hengda | Hengda | $62,133.25 |
| 2/13/13 | U1021305648 | Hengda | Hengda | Hengda | No BOL | $47,481.46 |
| 3/8/13 | AT811104697 | Hengda | Hengda | Hengda | Hengda | $38,767.07 |
| 5/3/13 | 18202711216 | Hengda | Hengda | Hengda | Hengda | $39,960.88 |
| 6/21/13 | U1041308143 | Hengda | Hengda | Hengda | Hengda | $44,866.55 |
| 6/27/13 | 66025167454 | Hengda | Hengda | Hengda | Hengda | $61,449.38 |

**Effect of the Scheme**

80. By using fraudulent and false invoices and Entry Statements, PEARL, DOREEN PEARL and LIU entered tires into the market of the United States at a duty rate lower than the rate that should have been applied. By using fraudulent paperwork to lower the duty rate, PEARL, DOREEN PEARL and LIU deprived the United States of approximately $9,721,794.32 in revenue.

All in violation of Title 18, United States Code, Section 371.

**COUNTS 2 - 26**

(Entry of Goods by Means of False Statements, 18 U.S.C. §§542 and 2)

81. Paragraphs 1 through 27, and 40 through 79 of the Indictment are re-alleged and incorporated by reference as if fully set forth herein.

82. From on or about June 14, 2012, through on or about June 27, 2013, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendants JAMES PEARL, DOREEN PEARL and SHUANG "LUCIA" LIU, and others presently known and unknown to the Grand Jury, knowingly made and procured the making of false statements concerning material matters in invoices, declarations, affidavits, letters, papers and statements submitted to Customs in connection with the entry and introduction of imported merchandise into the commerce of the United States, to wit: listing materially false manufacturer and exporter company names in documents included in the Summary Entry Packet submitted in connection with the following merchandise entries, without reasonable cause to believe the truth of such manufacturer or exporter company names, an did willfully cause an act and omission depriving the United States of a lawful duty accruing upon merchandise embraced and referred to said Summary Entry Packets in violation of Title 18, United States Code Section 542 and 2.

83. On or about each date set forth below, PEARL, DOREEN PEARL and LIU made false statements concerning material matters in invoices, declarations, affidavits, letters, papers and statements submitted to CBP contained in the following Summary Entry Packets:

| Count | Entry Date | Entry Number | Listed Manufacturer | Listed Exporter | Commercial Invoice | Shipper: Per Bill of Lading Entry Doc | Amount of tax not paid as a result of fraudulent statements |
|---|---|---|---|---|---|---|---|
| **2** | 6/14/12 | H3600727263 | Hengda | Hengda | Hengda | Hengda | $53,614.57 |
| **3** | 6/15/12 | 10003948543 | Shuanghe | Milestone | Milestone | Milestone | $52,395.56 |
| **4** | 6/15/12 | H3600727271 | Hengda | Hengda | Hengda | Hengda | $55,839.21 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **5** | 6/18/12 | 10003948535 | Shuanghe | Milestone | Milestone | Milestone | $49,633.54 |
| **6** | 6/19/12 | 10003949921 | Hengda | Hengda | Hengda | Hengda | $52,986.30 |
| **7** | 6/19/12 | 10003949939 | Hengda | Hengda | Hengda | Hengda | $53,081.13 |
| **8** | 6/20/12 | H3600727529 | Hengda | Hengda | Hengda | Hengda | $54,197.40 |
| **9** | 7/5/12 | 10003951117 | Hengda | Hengda | Hengda | Hengda | $46,436.85 |
| **10** | 7/6/12 | 10003951331 | Hengda | Hengda | Hengda | Hengda | $56,323.26 |
| **11** | 7/7/12 | H3600728428 | Hengda | Hengda | Hengda | Hengda | $57,789.22 |
| **12** | 7/14/12 | H3600729228 | Hengda | Hengda | Hengda | Hengda | $58,939.08 |
| **13** | 7/28/12 | 30071810046 | Hengda | Hengda | Hengda | Hengda | $50,279.59 |
| **14** | 7/30/12 | H3600729962 | Hengda | Hengda | Hengda | Hengda | $52,806.51 |
| **15** | 8/4/12 | 30071811150 | Hengda | Hengda | Hengda | Hengda | $56,109.88 |
| **16** | 8/8/12 | H3600730929 | Hengda | Hengda | Hengda | Hengda | $56,927.82 |
| **17** | 9/30/12 | 52008326127 | | | | | $62,805.26 |
| **18** | 10/19/12 | 66025144149 | Hengda | Hengda | Hengda | Hengda | $68,070.66 |
| **19** | 10/23/12 | U1011228750 | Hengda | Hengda | Hengda | Hengda | $73,921.10 |
| **20** | 11/25/12 | 52008327851 | | | | | $41,690.31 |
| **21** | 2/13/13 | 66025154478 | Hengda | Hengda | Hengda | Hengda | $62,133.25 |
| **22** | 2/13/13 | U1021305648 | Hengda | Hengda | Hengda | No BOL | $47,481.46 |
| **23** | 3/8/13 | AT811104697 | Hengda | Hengda | Hengda | Hengda | $38,767.07 |
| **24** | 5/3/13 | 18202711216 | Hengda | Hengda | Hengda | Hengda | $39,960.88 |
| **25** | 6/21/13 | U1041308143 | Hengda | Hengda | Hengda | Hengda | $44,866.55 |
| **26** | 6/27/13 | 66025167454 | Hengda | Hengda | Hengda | Hengda | $61,449.38 |

**Effect of the Scheme**

84. By using fraudulent and false invoices and Entry Statements, PEARL, DOREEN PEARL and LIU entered tires into the market of the United States at a duty rate lower than the rate that should have been applied. By using fraudulent paperwork to lower the duty rate, PEARL, DOREEN PEARL and LIU deprived the United States of approximately $1,245,090.42 in revenue.

All in violation of Title 18, United States Code, Section 542.

**COUNTS 27 – 51**

(Smuggling Goods into the United States, 18 U.S.C. §§545 and 2)

85. Paragraphs 1 through 27, and 40 through 79 of the Indictment are re-alleged and incorporated by reference as if fully set forth herein.

86. From on or about June 14, 2012, through on or about June 27, 2013, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendants JAMES PEARL, DOREEN PEARL and SHUANG "LUCIA" LIU, and others presently known and unknown to the Grand Jury, knowingly, willfully, and with the intent to defraud the United States, made and passed through a customhouse, and attempted to make and pass through a customhouse, materially false, forged, and fraudulent invoices, documents and papers, to wit: materially false merchandise invoices in documents included in the Summary Entry Packet submitted to Customs in violation of Title 18, United States Code, Section 545 and 2.

87. On or about each date set forth below, PEARL, DOREEN PEARL and LIU made materially false, forged, and fraudulent invoices, documents and papers, to wit: materially false merchandise invoices in documents included in the Summary Entry Packets submitted to Customs:

| Count | Entry Date | Entry Number | Listed Manufacturer | Listed Exporter | Commercial Invoice | Shipper: Per Bill of Lading Entry Doc | Amount of tax not paid as a result of fraudulent statements |
|---|---|---|---|---|---|---|---|
| **27** | 6/14/12 | H3600727263 | Hengda | Hengda | Hengda | Hengda | $53,614.57 |
| **28** | 6/15/12 | 10003948543 | Shuanghe | Milestone | Milestone | Milestone | $52,395.56 |
| **29** | 6/15/12 | H3600727271 | Hengda | Hengda | Hengda | Hengda | $55,839.21 |
| **30** | 6/18/12 | 10003948535 | Shuanghe | Milestone | Milestone | Milestone | $49,633.54 |
| **31** | 6/19/12 | 10003949921 | Hengda | Hengda | Hengda | Hengda | $52,986.30 |
| **32** | 6/19/12 | 10003949939 | Hengda | Hengda | Hengda | Hengda | $53,081.13 |
| **33** | 6/20/12 | H3600727529 | Hengda | Hengda | Hengda | Hengda | $54,197.40 |
| **34** | 7/5/12 | 10003951117 | Hengda | Hengda | Hengda | Hengda | $46,436.85 |
| **35** | 7/6/12 | 10003951331 | Hengda | Hengda | Hengda | Hengda | $56,323.26 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **36** | 7/7/12 | H3600728428 | Hengda | Hengda | Hengda | Hengda | $57,789.22 |
| **37** | 7/14/12 | H3600729228 | Hengda | Hengda | Hengda | Hengda | $58,939.08 |
| **38** | 7/28/12 | 30071810046 | Hengda | Hengda | Hengda | Hengda | $50,279.59 |
| **39** | 7/30/12 | H3600729962 | Hengda | Hengda | Hengda | Hengda | $52,806.51 |
| **40** | 8/4/12 | 30071811150 | Hengda | Hengda | Hengda | Hengda | $56,109.88 |
| **41** | 8/8/12 | H3600730929 | Hengda | Hengda | Hengda | Hengda | $56,927.82 |
| **42** | 9/30/12 | 52008326127 | | | | | $62,805.26 |
| **43** | 10/19/12 | 66025144149 | Hengda | Hengda | Hengda | Hengda | $68,070.66 |
| **44** | 10/23/12 | U1011228750 | Hengda | Hengda | Hengda | Hengda | $73,921.10 |
| **45** | 11/25/12 | 52008327851 | | | | | $41,690.31 |
| **46** | 2/13/13 | 66025154478 | Hengda | Hengda | Hengda | Hengda | $62,133.25 |
| **47** | 2/13/13 | U1021305648 | Hengda | Hengda | Hengda | No BOL | $47,481.46 |
| **48** | 3/8/13 | AT811104697 | Hengda | Hengda | Hengda | Hengda | $38,767.07 |
| **49** | 5/3/13 | 18202711216 | Hengda | Hengda | Hengda | Hengda | $39,960.88 |
| **50** | 6/21/13 | U1041308143 | Hengda | Hengda | Hengda | Hengda | $44,866.55 |
| **51** | 6/27/13 | 66025167454 | Hengda | Hengda | Hengda | Hengda | $61,449.38 |

## <u>Effect of the Scheme</u>

88. By using fraudulent and false invoices and Entry Statements, PEARL, DOREEN PEARL and LIU entered tires into the market of the United States at a duty rate lower than the rate that should have been applied. By using fraudulent paperwork to lower the duty rate, PEARL, DOREEN PEARL and LIU deprived the United States of approximately $1,245,090.42 in revenue.

All in violation of Title 18, United States Code, Section 545.

A TRUE BILL.

Original document – Signatures on file with the Clerk of Courts, pursuant to the E-Government Act of 2002.